UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

MATTHEW LOVEALL,

           Plaintiff,

    -v-                                       5:23-CV-1270 (AJB/TWD)

TYLER WALKER *et al.*,

           Defendants.
_____

**APPEARANCES:**                                       **OF COUNSEL:**

MATTHEW LOVEALL
Plaintiff, Pro Se
1092 County Route 30
Altmar, NY 13302

MURPHY BURNS GROUDINE LLP           THOMAS K. MURPHY, ESQ.
Attorneys for Defendants
407 Albany Shaker Road
Loudonville, NY 12211

**Hon. Anthony Brindisi, U.S. District Judge:**

## DECISION and ORDER

### I.    INTRODUCTION

On October 12, 2023, *pro se* plaintiff Matthew Loveall ("plaintiff") filed this 42 U.S.C. § 1983 action alleging that three members of the Oswego City Police Department violated his civil rights during his arrest for an assault. Dkt. No. 1. Along with his complaint, plaintiff moved for leave to proceed *in forma pauperis* ("IFP Application"). Dkt. Nos. 3, 4. The matter was initially assigned to U.S. District Judge Anne M. Nardacci, who referred the complaint to U.S. Magistrate Judge Thérèse Wiley Dancks for an initial review.

On November 2, 2023, Judge Dancks granted plaintiff's IFP Application and conducted an initial review of the complaint. Dkt. No. 5. There, Judge Dancks determined that plaintiff's Fourth Amendment claim (for excessive force) survived initial review against defendants Tyler Walker ("Officer Walker") and Justin D'Elia ("Sergeant D'Elia) and that plaintiff's Fourteenth Amendment claim (for deliberate medical indifference) survived initial review against Officer Walker, Sergeant D'Elia, and defendant Brady Slimmer ("Officer Slimmer"). *Id*.

On May 15, 2024, Officer Walker, Sergeant D'Elia, and Officer Slimmer (collectively "defendants") answered those claims in the complaint. Dkt. No. 15. The parties completed the bulk of discovery while plaintiff was still in the custody of the New York State Department of Corrections and Community Supervision ("DOCCS"), but he was later released from DOCCS custody and provided the Clerk's Office with his new mailing address.[1] Dkt. No. 34, 36. The matter was later reassigned to this Court for all further proceedings. Dkt. No. 35.

On July 30, 2025, defendants moved under Federal Rule of Civil Procedure 56 seeking summary judgment on plaintiff's § 1983 claims. Dkt. No. 39. Plaintiff failed to oppose. After the time period in which to do so expired, the Court held the motion for an extra thirty days just in case a belated opposition might arrive. Because no opposition has been filed, and because the time period in which to file an opposition has long since expired, the motion will be considered on the basis of the available submissions without oral argument.

---

[1] Before and after his incarceration, plaintiff sought the appointment of counsel. Dkt. Nos. 23, 37. Judge Dancks denied both requests without prejudice. Dkt. Nos. 24, 38. As Judge Dancks correctly explained on both occasions, there is no right to counsel in civil matters, and a consideration of the relevant factors set forth in *Terminate Control Corp. v. Horowitz*, 28 F.3d 1335 (2d Cir. 1994), militated against the appointment of counsel.

## II.     BACKGROUND

The following facts are taken from defendants' statement of material facts, Dkt. No. 39-11 ("Defs.' Facts"), and, for reasons discussed *infra*, will be deemed admitted for the purpose of assessing defendants' motion for summary judgment.[2]

On October 11, 2020, at about 2:28 a.m., Sergeant D'Elia, Officer Walker, and Officer Slimmer responded to an assault complaint in the City of Oswego (the "City"). Defs.' Facts ¶ 1. The officers arrived at the scene and made contact with three women, who reported that one of them had been visiting the others at a residence they shared with plaintiff when he "attacked and sexually assaulted" the third woman. *Id*. ¶ 2. The putative victim gave a sworn deposition about the assault and told the officers that she wanted to pursue charges against plaintiff. *Id*. ¶ 3. The other two women gave the officers written consent to search their shared residence. *Id*.

Sergeant D'Elia and Officer Walker entered the residence. Defs.' Facts ¶ 4. The officers found plaintiff seated on a couch watching television. *Id*. He was "wearing shorts, no shirt, and had dried blood on his lips, a large bump and laceration with dry and wet blood near his left eye, and scrapes on his left knee." *Id*. ¶ 5. The officers decided to arrest plaintiff based on what they had learned from the witnesses and the victim as well as what they had observed up to that point. *See id*. They told him to stand up and put his hands behind his back. *Id*. ¶ 6. He refused. *Id*.

The officers proceeded to arrest plaintiff anyway. They reached for him while he was still seated on the couch. Defs.' Facts ¶ 7. But plaintiff "pulled away and began turning and flopping around on the couch to evade being taken into custody." *Id*. After a "brief struggle," the officers were able to restrain plaintiff and place him in handcuffs. *Id*. ¶ 8. Thereafter, the officers stood plaintiff up from the couch and walked him to Officer Walker's patrol car. *Id*. ¶ 9.

---

[2] Defendants have filed the body camera footage from this incident. Ex. C to Murphy Aff., Dkt. No. 39-3. The Court's approach to this evidence will be discussed *infra*, too.

At no point during the arrest or the ensuing trip to the police station did plaintiff complain to either officer about his pre-existing injuries or request any medical attention. *Id*. ¶¶ 9–11.

The time of arrest was 3:50 a.m. Defs.' Facts ¶ 16. The transport to the police station took no more than a few minutes. *Id*. ¶ 12. During intake, non-party Sergeant John Chodubski ("Sergeant Chodubski") noticed plaintiff's injured eye and asked him if he wanted some medical attention. *Id*. Plaintiff declined medical help, but told Sergeant Chodubski that he needed to urinate. *See id*. Soon after, while being fingerprinted, plaintiff told Officer Slimmer that his right ankle hurt. *Id*. ¶ 13. Officer Slimmer saw that plaintiff's ankle appeared swollen. *Id*. But plaintiff did not say anything to Officer Slimmer about his eye injury or ask him for any medical attention. *See id*. None of the officers thought that the injuries appeared to be serious. *Id*. ¶ 14.

At about 8:15 a.m., a state-court judge arraigned plaintiff virtually on charges of unlawful imprisonment, attempted rape, and attempted criminal sex act. Defs.' Facts ¶ 15. After the court proceeding, plaintiff requested medical attention. *Id*. ¶ 16. Plaintiff was promptly transported to the Oswego Hospital's emergency department, where he arrived at about 8:53 a.m. *Id*. ¶ 17. The hospital record shows that plaintiff's chief complaint was "minor trauma" and that:

> Patient reports that he was drinking alcohol last night. He was involved in an altercation. He is complaining of pain in the right ankle, headache, generalized aches and pains. Patient has laceration to the left eye. Right ankle is swollen. Described pain as moderate. Pain is worse with ambulation and bearing weight. He did not take anything for symptomatic relief. Patient is under custody of law enforcement.

Ex. D to Murphy Decl., Dkt. No. 39-6 at 2. The hospital physician ordered some imaging, which showed an ankle sprain and a facial fracture. *Id*. at 2–4. Plaintiff was soon transferred to another hospital for additional treatment. *Id*. at 4–5. He was later convicted by a jury of the charges and sentenced to five years in prison. Defs.' Facts ¶ 19.

### III. LEGAL STANDARD

The entry of summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).  A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute over a material fact is considered "genuine" when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*.  In conducting this analysis, the court must view the facts and draw all reasonable inferences in the light most favorable to the non-movant. *Id*. at 255.  Even so, there is no genuine issue for trial "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 588 (1986).

### IV. DISCUSSION

#### A. Threshold Matters

As is often the case with summary judgment, there are a few threshold matters to address before reaching the merits of plaintiff's remaining § 1983 claims.

#### 1. Plaintiff's Pro Se Status

First off, plaintiff is *pro se*.  That means he is not represented by an attorney.  Therefore, his pleadings, motions, and filings must be held to less stringent standards than those that might be drafted by a lawyer. *See Ahlers v. Rabinowitz*, 684 F.3d 53, 60 (2d Cir. 2012).  As the Second Circuit has explained, *pro se* filings must be "construed liberally" with "special solicitude" and interpreted to raise the strongest claims they suggest. *Hogan v. Fischer*, 738 F.3d 509, 519 (2d Cir. 2013).  "This is particularly so when the *pro se* plaintiff alleges that [his] civil rights have been violated." *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008).

### 2. Plaintiff's Failure to Oppose Summary Judgment

*Pro se* or not, plaintiff failed to oppose defendants' motion for summary judgment. The general rule in this situation is that a non-movant's failure to respond to a motion for summary judgment does not relieve the movant of their ordinary burden of production, *i.e.*, showing that the undisputed material facts warrant judgment as a matter of law. *Vermont Teddy Bear Co., Inc. v. 1-800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004). Nor does it relieve a reviewing court of its obligation to faithfully apply the summary judgment standard. *Id*. In other words, a non-movant's failure to oppose summary judgment does not permit a court to grant the motion based on some notion of "consent" or "default" attributable to the non-movant. *D.H. Blair & Co., Inc. v. Gottdiener*, 462 F.3d 95, 110 (2d Cir. 2006).

The same rule applies to unrepresented parties. *Champion v. Artuz*, 76 F.3d 483, 486 (2d Cir. 1996) (per curiam). But *pro se* litigants benefit from an extra safeguard: the district court is obligated to ensure that a *pro se* litigant has "actual notice, provided in an accessible manner, of the consequences of [his] failure to comply with the requirements of Rule 56." *Irby v. N.Y. City Transit Auth.*, 262 F.3d 412, 414 (2d Cir. 2001); *see also Vital v. Interfaith Med. Ctr.*, 168 F.3d 615, 620 (2d Cir. 1999) (justifying notice requirement because "it is not obvious to a layman that when his opponent files a motion for summary judgment supported by affidavits he must file his own affidavits contradicting his opponent's if he wants to preserve factual issues for trial").

Either the district court or the movant can supply this notice. *See, e.g.*, *M.B. v. Reish*, 119 F.3d 230, 232 (2d Cir. 1997). The notice must be "provided in an accessible manner," *Irby*, 262 F.3d at 414, include a "short and plain statement in ordinary English" that explains "the nature and consequences of summary judgment," *McPherson v. Coombe*, 174 F.3d 276, 281 (2d Cir. 1999), and must advise the *pro se* litigant to "set forth all available evidence demonstrating a

genuine dispute over material facts," *Sawyer v. Am. Fed. Of Gov't Emps.*, 180 F.3d 31, 35 (2d Cir. 1999) (citation omitted). Failure to provide this notice is reversible error unless the record makes it obvious that the *pro se* litigant "has demonstrated a clear understanding of the nature and consequences of a summary judgment motion." *Jova v. Smith*, 582 F.3d 410, 414 (2d Cir. 2009) (per curiam).

Plaintiff benefitted from this procedural safeguard. Defendants served plaintiff with their summary judgment motion at his updated mailing address. Dkt. No. 39-14. Defendants' motion papers included a notice—a standardized form in our District—that informed plaintiff about how to properly respond to the summary judgment motion and warned him that failure to do so might result in some or all of his claims being dismissed. Dkt. No. 39-1. The next day, the Clerk of the Court mailed plaintiff a second copy of this standard notice, along with a letter that emphasized the opposition deadline and cautioned plaintiff that the failure to timely respond might result in this case being dismissed. Dkt. No. 40.

This standard notice described, in terms that are about as straightforward as any legal concept can be explained in a single-page document, "the nature and consequences of summary judgment." This notice also instructed plaintiff to marshal copies of all of his record evidence and spelled out how he should respond to the movant's statement of material facts. In short, plaintiff received the benefit of the procedural safeguard to which *pro se* litigants are entitled.

**3. Defendants' Statement of Material Facts**

Ordinarily, the special solicitude that district courts extend to *pro se* litigants on summary judgment would not stop there. The summary judgment procedure puts the initial responsibility for identifying genuine disputes of material fact on the parties. The process is spelled out in our Local Rules. Briefly summarized, the party trying to avoid a trial (*i.e.*, the movant) is supposed

to identify—in a document called the statement of material facts—the undisputed material facts that entitle them to judgment as a matter of law on the claim or defense at issue. N.D.N.Y. L.R. 56.1(a). In response, the party seeking to justify the need for a trial on that claim or defense (*i.e.*, the non-movant) is supposed to respond—in a separate-but-matching document—by admitting or denying each material fact offered by the movant. N.D.N.Y. L.R. 56.1(b). And for each denial, the non-movant is also supposed to identify the specific record evidence that creates a "genuine" dispute over that material fact. *Id*.

That might sound clear enough. But *pro se* litigants often struggle to craft a compliant submission. So the reviewing court typically takes a function-over-form approach to what it has received in any given case. Sometimes this means looking at the underlying record (at least what has been made available) to determine if a live fact dispute exists. *See, e.g.*, *Holtz v. Rockefeller & Co., Inc.*, 258 F.3d 62, 73 (2d Cir. 2001) (holding district court "may in its discretion opt to conduct an assiduous review of the record"), *abrogated on other grounds by Gross v. FBI Fin. Servs., Inc.*, 557 U.S. 167 (2009).

But Rule 56 "does not impose an obligation on a district court to perform an independent review of the record to find proof of a factual dispute." *Amnesty Am. v. Town of W. Hartford*, 288 F.3d 467, 470 (2d Cir. 2002) (collecting cases).[3] Instead, the reviewing court will typically focus its attention on the *pro se* litigant's incomplete or partial submissions and conduct a careful review of what has been offered to try to determine whether a trial might be warranted on any of

---

[3] Notably, however, even in the absence of an opposition, a verified complaint should be treated as an affidavit for summary judgment purposes. *See, e.g.*, *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995). Plaintiff's complaint is not verified. Dkt. No. 1. But even if it were, the non-conclusory factual assertions in that document are insufficient to place any of the material facts in genuine dispute. *Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir. 1996) ("While genuineness runs to whether disputed factual issues can reasonably be resolved in favor of either party, materiality runs to whether the dispute matters, *i.e.*, whether it concerns facts that can affect the outcome under the applicable substantive law.").

the claims. *See Jackson v. Fed. Exp.*, 766 F.3d 189, 198 (2d Cir. 2014) ("In the case of a *pro se*, the district court should examine every claim or defense with a view to determining whether summary judgment is legally or factually appropriate.").

Of course, the "special solicitude" extended to *pro se* litigants does not mean that every procedural requirement governing summary judgment must get thrown out the window. A *pro se* litigant is not exempt from procedural rules. *See, e.g.*, *Edwards v. I.N.S.*, 59 F.3d 5, 8 (2d Cir. 1995). This includes procedural rules governing an opposition to summary judgment. *See, e.g.*, *Jorgensen v. Epic/Sony Records*, 351 F.3d 46, 50 (2d Cir. 2003).

Where, as here, the non-movant fails to submit an opposition, the reviewing court may deem admitted the properly supported facts in the movant's statement of material facts for the purpose of assessing the motion for summary judgment. N.D.N.Y. L.R. 56.1(b). Courts in this circuit routinely apply this rule to cases involving a *pro se* litigant, especially one who fails to oppose or respond to the movant's statement of material facts. *See, e.g.*, *DeJesus v. Malloy*, 531 F. Supp. 3d 650, 658 (W.D.N.Y. 2021); *Martin v. Town of Simsbury*, 505 F. Supp. 3d 116, 125 (D. Conn. 2020); *Barnes v. Malavi*, 412 F. Supp. 3d 140, 142 n.3 (E.D.N.Y. 2019); *Ogalo v. N.Y. State Thruway Auth.*, 972 F. Supp. 2d 301, 305 (N.D.N.Y. 2013). Accordingly, the properly supported material facts in defendants' Local Rule 56.1(a) Statement, Dkt. No. 39-11, will be deemed admitted for the purpose of assessing defendants' motion for summary judgment.

**4. The Video Evidence**

Finally, as noted *supra*, defendants filed the body camera footage from this incident. In *Scott v. Harris*, the Supreme Court made clear that video evidence can and should be considered in determining whether genuine material issues of fact exist. 550 U.S. 372 (2007). As the Fifth

Circuit has explained, *Scott* "empowers a district court to disregard testimony that is at odds with video evidence." *Orr v. Copeland*, 844 F.3d 484, 491 (5th Cir. 2016).

Defendants relied on this footage, in part, to support certain assertions in their statement of material facts. The Court has reviewed the footage to confirm that this evidence does, in fact, support those assertions of fact. *See, e.g.*, *Congregation Rabbinical Coll. of Tartikov, Inc. v. Vill. of Pomona*, 138 F. Supp. 3d 352, 394 (S.D.N.Y. 2015) (collecting cases explaining courts should disregard factual assertions lacking record support).

On the one hand, this video footage broadly confirms the movant's version of events, *e.g.*, Sergeant D'Elia and Officer Walker encountered plaintiff sitting on his couch, he refused their commands, a brief struggle ensued, and plaintiff's injuries appeared to be pre-existing in nature. But on the other hand, this footage does not offer the precise vantage points that would be necessary to fully reconstruct the encounter on a second-by-second basis.

This is a common problem with video evidence at the summary judgment stage. After all, not every case will be like *Scott*, where the video evidence reduced one party's version of events to a "visible fiction." 550 U.S. at 381. More commonly, the video evidence will capture only part of the relevant events. Under those circumstances, courts should "resist the temptation to uncritically assume that video evidence inherently possesses a unique kind of 'reliable factual conclusiveness.'" *Hulett v. City of Syracuse*, 253 F. Supp. 3d 462, 481 (N.D.N.Y. 2017).

In short, the Court has reviewed the body camera footage and, to the extent that this video evidence depicts relevant events, will consider whether it tends to establish any genuine disputes over the material facts that might be sufficient to warrant a trial.

### B. The Merits

That leaves the merits. Plaintiff's claims are brought under 42 U.S.C. § 1983. "Section 1983 creates a cause of action based on personal liability and predicated upon fault." *Vance v. Peters*, 97 F.3d 987, 991 (7th Cir. 1996) (citation omitted), *cert. denied*, 520 U.S. 1230 (1997). Although the precise state-of-mind requirement might vary, *Daniels v. Williams*, 474 U.S. 327, 330 (1986), a § 1983 claim holds an individual personally liable for the role his or her acts or omissions played in violating someone's constitutional rights, *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009). In summary, then, "[t]o establish a Section 1983 violation, a plaintiff must plead (and later prove) that each defendant was personally involved in the alleged constitutional violation." *Wiggins v. Griffin*, 86 F.4th 987, 996 (2d Cir. 2023).

#### 1. Excessive Force

Plaintiff's § 1983 Fourth Amendment claim for excessive force survived initial review against Officer Walker and Sergeant D'Elia. Dkt. No. 5.

"The Fourth Amendment prohibits the use of excessive force in making an arrest, and whether the force used is excessive is to be analyzed under that Amendment's 'reasonableness' standard.'" *Outlaw v. City of Hartford*, 884 F.3d 351, 366 (2d Cir. 2018) (quoting *Brown v. City of N.Y.*, 798 F.3d 94, 100 (2d Cir. 2015)). Determining excessiveness "requires a balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion." *Tolan v. Cotton*, 572 U.S. 650, 656 (2014) (per curiam).

Fourth Amendment reasonableness is an "objective" standard. *Graham v. Connor*, 490 U.S. 386, 388 (1989); *Dancy v. McGinley*, 843 F.3d 93, 116–17 (2d Cir. 2016) (explaining that officer's motivation or subjective intent is irrelevant). This "objective reasonableness" standard

is wide-ranging, *Barnes v. Felix*, 605 U.S. 73, 76 (2025), highly fact-specific, *Kisela v. Hughes*, 584 U.S. 100, 104 (2018) (per curiam), and requires the reviewing court to consider the "totality of the circumstances," *Tennessee v. Garner*, 471 U.S. 1, 9 (1985). Importantly, though, "[c]ourts must be 'careful to evaluate the record from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight.'" *Tracy v. Freshwater*, 623 F.3d 90, 96 (2d Cir. 2010) (quoting *Jones v. Parmley*, 465 F.3d 46, 61 (2d Cir. 2006)).

"The continuum along which excessiveness of force in making an arrest is assessed is not marked by visible signposts." *Brown*, 798 F.3d at 103. The Second Circuit has endorsed a non-exclusive list of factors that, at least to the extent they are relevant in any given case, should be taken into account as part of this balancing inquiry:

> (1) the nature and severity of the crime leading to the arrest, (2) whether the suspect posed an immediate threat to the safety of the officer or others, (3) whether the suspect was actively resisting arrest or attempting to evade arrest by flight; (4) the need for the application of force; (5) the relationship between the need and the amount of force that was used; (6) the extent of the injury inflicted; and (7) whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm.

*Linton v. Zorn*, 135 F.4th 19, 31 (2d Cir. 2025) (cleaned up).[4]

"If this balancing exercise supports a conclusion that a reasonable jury could find that a defendant applied excessive force in a manner that was objectively unreasonable under the circumstances, after drawing inferences in the light most favorable to the plaintiff, the plaintiff

---

[4] These factors are a combination of the traditional three-factor test for assessing objective reasonableness in the excessive force context from *Graham v. Connor*, 490 U.S. 386 (1989), and the Second Circuit's homegrown rubric for certain excessive force claims, which was first used in the "non-seizure, non-prisoner" context of the Fourteenth Amendment in *Johnson v. Newburgh Enlarged Sch. Dist.*, 239 F.3d 246, 251–52 (2d Cir. 2001), but later included as part of a Fourth Amendment excessive force inquiry in *Figueroa v. Mazza*, 825 F.3d 89, 106 (2d Cir. 2016). A similar balancing test governs post-arraignment excessive force claims brought by pre-trial detainees under the Fourteenth Amendment. *See, e.g.*, *Frost v. N.Y. City Police Dep't*, 980 F.3d 231, 252 (2d Cir. 2020); *LaFever v. Clarke*, 525 F. Supp. 3d 305, 334 (N.D.N.Y. 2021) (explaining that the standards are "broadly similar").

has made out a constitutional violation for purposes of surviving the defendant's motion for summary judgment." *Linton*, 135 F.4th at 31.

The application of this legal standard to the available record confirms that defendants are entitled to summary judgment on this § 1983 claim. The admitted facts establish that Sergeant D'Elia and Officer Walker arrived on the scene to investigate a reported assault, interviewed two witnesses, and then took a sworn statement from the putative victim that identified plaintiff as her assailant. They received consent to enter the shared residence, where they found plaintiff seated on the couch with visible injuries tending to corroborate the witnesses' version of events.

The officers told plaintiff to stand up and place his hands behind his back. When plaintiff refused, the officers reached for him while he was still seated on the couch. But he "pulled away and began turning and flopping around on the couch to evade being taken into custody." After a "brief struggle," the officers were able to restrain him, place him in handcuffs, stand him up from the couch, and walk him outside to a patrol car.

With all this in mind, no reasonable jury could find in plaintiff's favor on this excessive force claim. The crime that led to the arrest was of a violent nature. Plaintiff's visible condition tended to suggest that he posed a continuing threat to safety. Plaintiff actively resisted when the officers attempted to arrest him. Plaintiff's resistance warranted the use of some amount of force sufficient to effect the arrest. *See, e.g.*, *Sullivan v. Gagnier*, 225 F.3d 161, 165–66 (2d Cir. 2000) ("The fact that a person whom a police officer attempts to arrest resists, threatens, or assaults the officer no doubt justifies the officer's use of *some* degree of force . . . .").

Of course, this was not a "license to use force without limit." *Sullivan*, 225 F.3d at 166. But there is nothing in the available record to suggest that either officer applied any more force than was strictly necessary to effect a lawful arrest. *Cf. Lennox v. Miller*, 968 F.3d 150, 157 (2d

Cir. 2020) ("[I]t is impermissible to use significant force against a restrained arrestee who is not actively resisting.").

The admitted facts further establish, and a review of the body camera footage confirms, that the parties' struggle was fairly brief and involved little more than some arm wrestling to get plaintiff into a position to be handcuffed. There is no indication in the record or in the available footage to suggest that plaintiff's injuries were *not* pre-existing at the time of this encounter.

Although "the relevant legal analysis depends not on a particular quantum of injury but on a showing of the objective reasonableness of the conduct," *Moore v. Keller*, 498 F. Supp. 3d 335, 357 (N.D.N.Y. 2020), evidence of a plaintiff's injury is still relevant "because it is probative of the amount and type of force actually used by the arresting officers," *Rolkiewicz v. City of N.Y.*, 442 F. Supp. 3d 627, 645 (S.D.N.Y. 2020).

Again, however, the admitted facts establish, and a review of the body camera footage confirms, that plaintiff's injuries occurred before the encounter. There is nothing in the record tending to support an inference that plaintiff suffered any *additional* injuries as a result of the conduct of either officer. And nothing in the record would support the inference that plaintiff's pre-existing injuries were somehow exacerbated by the otherwise-reasonable force used by the two officers, either.

In reaching these conclusions, the Court acknowledges that there is almost always going to be some lingering doubt about precisely what happened on a second-by-second basis in any police-citizen encounter. But "metaphysical doubt" about the facts is not enough to warrant the denial of a properly supported motion for summary judgment. *Matsushita Elec. Indus. Co.*, 475 U.S. at 586.

That is especially so where, as here, there are no inconsistencies or other contradictions in the available submissions that a fact-finder might rationally credit at a trial. *See Aponte v. Perez*, 75 F.4th 49, 59 (2d Cir. 2023) (explaining non-movant can rely on inconsistencies in movant's own showing to establish a genuine dispute of material fact). Because no "jury, instructed as to the relevant factors, could reasonably find that the force used was excessive," *Brown*, 798 F.3d at 103, defendants are entitled to summary judgment on this § 1983 claim.

### 2. Deliberate Indifference

Plaintiff's § 1983 Fourteenth Amendment claim for deliberate medical indifference survived initial review against Officer Walker, Sergeant D'Elia, and Officer Slimmer. Dkt. No. 5.

A pre-trial detainee's § 1983 claim based on the alleged denial of adequate medical care is "governed by the Due Process Clause of the Fourteenth Amendment[.]" *Darnell v. Pineiro*, 849 F.3d 17, 29 (2d Cir. 2017); *Darby v. Greenman*, 14 F.4th 124, 128 (2d Cir. 2021) (tracing development of this doctrine). To establish a claim, the plaintiff must show that: (1) he had a "serious medical need"; and (2) the defendant "acted with deliberate indifference." *Charles v. Orange County*, 925 F.3d 73, 86 (2d Cir. 2019).

First, the alleged deprivation of adequate medical care must be objectively "sufficiently serious." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (cleaned up). This question implicates two, related inquiries: whether the plaintiff was actually deprived of adequate medical care and, if so, whether the inadequacy was sufficiently serious. *See Singletary v. Russo*, 377 F. Supp. 3d 175, 188 (E.D.N.Y. 2019). "The serious medical needs standard contemplates a condition of urgency such as one that may produce death, degeneration, or extreme pain." *Charles*, 925 F.3d

at 86; *see also Darnell*, 849 F.3d at 30 (explaining this test "includes risk of serious damage to physical and mental soundness").

"In determining whether a medical need is sufficiently serious to be cognizable as a basis for a constitutional claim for deprivation of medical care, we consider factors such as whether a reasonable doctor or patient would find the injury important and worthy of treatment, whether the medical condition significantly affects an individual's daily activities, and whether the illness or injury inflicts chronic and substantial pain." *Charles*, 925 F.3d at 86.

Second, the plaintiff must show that the defendant knew, or should have known, that the failure to provide the requested medical treatment would pose a substantial risk to the detainee's health. *Charles*, 925 F.3d at 87 (emphases omitted); *see also Horace v. Gibbs*, 802 F. App'x 11, 14 (2d Cir. 2020) (summary order) (explaining this test has been made more plaintiff-friendly in its application); *Boyd v. Deasis*, 524 F. Supp. 3d 128, 141 (W.D.N.Y. 2021) (explaining same).

Measured against this legal standard, no reasonable jury could conclude that plaintiff has a viable § 1983 claim for inadequate or even delayed medical care. The admitted facts establish that plaintiff did not complain about his injuries to Sergeant D'Elia or Officer Walker at the time of his arrest or during the short trip to the police station that followed. Nor did plaintiff request any medical attention from either officer at that time.

The record further establishes that upon plaintiff's arrival at the police station, Sergeant Chodubski noticed plaintiff's injured eye and asked him if he wanted medical attention, which plaintiff declined. Plaintiff later reported to Officer Slimmer that his right ankle hurt. Officer Slimmer's own impression was that plaintiff's ankle appeared swollen, but plaintiff did not say anything to Officer Slimmer about his eye injury or, for that matter, request medical attention at that time. None of the officers believed that the injuries were serious. About four hours elapsed

until plaintiff was arraigned. After this proceeding, plaintiff requested medical attention. He was promptly transported to the hospital's emergency room, where he received professional medical treatment for injuries that he self-reported as causing him "moderate" pain.

Plaintiff suffered an ankle sprain and a facial fracture. Although these are significant medical conditions (the fracture in particular), it is doubtful that either one, or both together, would qualify as "objectively sufficiently serious." *See, e.g. Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir. 1994) (explaining this prong requires evidence of a "condition of urgency, one that may produce death, degeneration, or extreme pain").

But even assuming that one or both of these conditions were "objectively sufficiently serious," no rational fact-finder could review the evidence available in this case and conclude that Sergeant D'Elia, Officer Walker, and/or Officer Slimmer were deliberately indifferent to plaintiff's medical needs. That conclusion holds true even when you account for the objective, plaintiff-protective nature of this *mens rea* element. *Darnell*, 849 F.3d at 36 ("A detainee must prove that an official acted intentionally or recklessly, and not merely negligently."); *Dumel v. Westchester County*, 656 F. Supp. 3d 454, 465 (S.D.N.Y. 2023) (explaining this plaintiff-friendly standard is "akin to objective recklessness").

The available record establishes that defendants recognized that plaintiff suffered from some visible injuries that they judged to be less than serious, offered him medical care that he initially declined and, when he requested treatment, promptly transported him to the hospital, where he received professional care. There is nothing in the record from which a rational jury might conclude otherwise. *See, e.g.*, *Murrell v. Moscicki*, --F. Supp. 3d--, 2025 WL 1886127, at *6 (W.D.N.Y. July 8, 2025) ("No reasonable factfinder could conclude that Defendants' timely and robust responses to Plaintiff's complaints amounted to inadequate medical care.").

Although there may be cases in which a detainee's condition is serious enough to create a dispute over whether different or more immediate action was warranted, *Maldonado v. Town of Greenburgh*, 460 F. Supp. 3d 382, 397 (S.D.N.Y. 2020), or where a delay in care alone might be enough to establish a jury question on this kind of claim, *Sims v. City of N.Y.*, 788 F. App'x 62, 64 (2d Cir. 2019) (summary order), there is no indication that any defendant "recklessly failed to act with reasonable care to mitigate the risk that the condition posed," *Darnell*, 849 F.3d at 35, or that plaintiff "suffer[ed] serious adverse health consequences" because any defendant failed to take different or more aggressive action, *Charles*, 925 F.3d at 89.  Accordingly, defendants are entitled to summary judgment on this § 1983 claim.

## V.   CONCLUSION

Viewed in the light most favorable to the non-movant, and even accounting for his *pro se* status, the available record would not permit a rational fact-finder to return a verdict in plaintiff's favor on either of his § 1983 claims.

Therefore, it is

ORDERED that

1. Defendant's motion for summary judgment (Dkt. No. 39) is GRANTED; and

2. Plaintiff's complaint (Dkt. No. 1) is DISMISSED with prejudice.

The Clerk of the Court is directed to terminate the pending motion, enter a judgment accordingly, and close the file.

**IT IS SO ORDERED.**

Dated:  October 21, 2025
        Utica, New York.

Anthony J. Brindisi
U.S. District Judge